Brett ZAGORAC, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–0910–CR–481.

Court of Appeals of Indiana.

Jan. 31, 2011.

Rehearing Denied June 1, 2011.

---

Mark A. Bates, Schererville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Arturo Rodriguez II, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Brett Zagorac appeals the denial of his motion to correct error following the summary denial of his petition to expunge his arrest record. Zagorac has not demonstrated the summary denial was an abuse of the trial court's "almost unfettered discretion" to deny his petition.[1] *See State ex rel. Indiana State Police v. Arnold*, 906 N.E.2d 167, 169 (Ind.2009) (holding trial court's discretion to summarily deny such a petition is "almost unfettered"). Neither can Zagorac succeed with his argument the expungement statute violates the Indiana Constitution, as he waived that argument for appeal by failing to present it to the trial court. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

On March 23, 2005, the Lake County prosecutor charged Zagorac with child molesting for an act that allegedly occurred "on or about May 30, 2003." (App. at 12.)[2] The Probable Cause Affidavit indicates a second-grade child reported Zagorac, who was the substitute teacher, called the boy up to the teacher's desk to discuss an assignment. While the boy was at the desk, Zagorac touched the boy's buttocks, put his hand under the boy's shirt to rub his bare back, and then placed his hand "on [the boy's] penis on top of his clothing." (*Id.* at 13.)

On October 2, 2007, the State moved to dismiss that charge because "[t]hough the State believes it can prove its case beyond a reasonable doubt, the child victim in this case has become physically ill because of his fear of testifying in the presence of the defendant and the State is unable to move forward with its case." (*Id.* at 19.) The trial court dismissed the case with prejudice.

On July 17, 2009, under the cause number for the dismissed molesting charge, Zagorac petitioned to expunge that arrest from his criminal record because the "arrest was in error as he did not commit the offense alleged and/or no probable

---

1. We heard oral argument on this case at Purdue University, and we thank the Purdue Student Government for its hospitality and thank counsel for joining us for a lively discussion.

2. Zagorac initially filed a one volume "Appendix of the Appellant," which we will cite as "(App.)." Thereafter, he filed a one volume "Supplemental Appendix of the Appellant," which we will cite as "(Supp.App.)."

cause existed." (*Id.* at 15.) The trial court ordered the Lake County Sheriff's Department, the Indiana Attorney General's Office, the State Central Repository for Records, and the Lake County Prosecutor to return affidavits indicating whether Zagorac had a record of arrests, whether he had criminal charges pending, and whether any of the agencies opposed expungement of the May 2003 arrest from his arrest records. *See* Ind.Code § 35–38–5–1(c)–(d) (requiring service of petition on agencies so they may object to expungement). The Lake County Police Department was also ordered to provide reports of Zagorac's criminal history from various sources.

The Indiana Attorney General's Office opposed expungement because:

1. Defendant has not established a statutory ground that permits granting the expungement petition;

2. Defendant's offenses are other than a minor traffic offense; and

3. Defendant is not eligible for the relief specified in Ind.Code § 35–38–5–5 for limiting criminal history access since he does not have a conviction.

(App. at 40.) In its memorandum opposing the motion, the Attorney General noted Zagorac admitted in his petition for expungement that he had two other "factually-related charges," (*id.* at 15), of which a jury found him not guilty.

The Indiana State Police opposed expungement because "the department will be severely hampered in its ability to provide full and accurate data to criminal justice agencies, non-criminal justice organizations and individuals if the requested records are expunged." (*Id.* at 37.)

The Lake County Prosecutor's Office filed an opposition to expungement that explained:

1. That Mary K. Ryan, Trial Supervisor for Criminal Court Room II Judge Clarence D. Murray, upon oath, states that I was the supervisor for the courtroom in which the petitioner's felony case was assigned.

2. That as supervisor of this courtroom, I authorized the dismissal of the felony case that was filed against the petitioner. The dismissal was filed after the jury had been selected and sworn, but prior to witness testimony.

3. That the dismissal of the felony case was not for lack of probable cause or mistaken identity, as indicated in the dismissal filed in open court on October 3, 2007 . . . .

4. That as part of the investigation that the Lake County Prosecutor's office conducted against the petitioner, documents were obtained from Dupage County, Illinois, State's Attorney's office that showed that the petitioner was charged on October 11, 2005, with twenty-five (25) counts of Battery on a Minor and Criminal Sexual Abuse that occurred while the above captioned cause was pending . . . .

5. That the charges against the petitioner in Dupage County were of a similar nature to this case, and were the subject of a request under Indiana Rule of Evidence 404(b) by the State of Indiana for admission during the trial in this cause.

6. That the Lake County Prosecutor's office objects to the expungement of the petitioner's records and asserts that the statutory requirements for expungement do not apply to the petitioner.

(*Id.* at 33.)

After receiving those affidavits in opposition, the trial court summarily denied Zagorac's expungement petition without holding a hearing. Zagorac filed a motion to correct error, which the court denied:

Pursuant to I.C. 35–38–5–1(a), the arrest records of an individual against whom charges were in fact filed may only be expunged if those charges were dropped because of a mistaken identity; no offense was in fact committed; or there was an absence of probable cause. Pursuant to subsection (d) of the statute, the court shall summarily deny the petition if it determines, "based on information contained in sworn statements submitted by individuals who represent an agency, the petitioner is not entitled to an expungement of records." Attached to the State of Indiana's Opposition to Verified Petition for Expungement are sworn statements including one by Supervising Deputy Prosecuting Attorney Mary K. Ryan representing the Office of the Prosecuting Attorney of Lake County. Ms. Ryan affirms that the charges were not dropped for reasons delineated in I.C. 35–38–5–1. The Motion to Dismiss in the above-captioned cause indicates that the State dismissed the charges because, "[t]hough the State believes it can prove its case beyond a reasonable doubt, the child victim in this case has become physically ill because of his fear of testifying in the presence of the defendant and the State is unable to move forward with its case." Therefore, the charges were not dropped based on mistaken identity; the fact that no offense was in fact committed; or because there was an absence of probable cause. Summary denial of the Petition for Expungement was appropriate.

(*Id.* at 51.)

## DISCUSSION AND DECISION

■ "When ruling on a Motion to Correct Errors, the trial court sits as the initial fact finder on the issues raised, and we review the trial court's determination for an abuse of discretion." *Booher v. State*, 773 N.E.2d 814, 817 (Ind.2002). An abuse of discretion occurs if the decision was "against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *James v. State*, 872 N.E.2d 669, 671 (Ind. Ct.App.2007).

The issues raised require us to interpret and apply Indiana Code § 35–38–5–1 (the expungement statute). When interpreting statutes, we use the following standard:

The first step in interpreting a statute is to determine whether the Legislature has spoken clearly and unambiguously on the point in question. When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. Clear and unambiguous statutes leave no room for judicial construction. However when a statute is susceptible to more than one interpretation it is deemed ambiguous and thus open to judicial construction. And when faced with an ambiguous statute, other well-established rules of statutory construction are applicable. One such rule is that our primary goal of statutory construction is to determine, give effect to, and implement the intent of the Legislature. To effectuate legislative intent, we read the sections of an act together in order that no part is rendered meaningless if it can be harmonized with the remainder of the statute. We also examine the statute as a whole. And we do not presume that the Legislature intended language used in a statute to be applied illogically or to bring about an unjust or absurd result.

*City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind.2007).

■ A person may petition for expungement of records related to an arrest if:

(1) an individual is arrested but no criminal charges are filed against the individual; or

(2) all criminal charges filed against an individual are dropped because:

   (A) of a mistaken identity;

   (B) no offense was in fact committed; or

   (C) there was an absence of probable cause.

Ind.Code § 35–38–5–1(a).[3] The expungement statute is the "exclusive means" for expunging arrest records when no charges were filed or the charges were dropped. *Arnold,* 906 N.E.2d at 169. Thus, because charges were filed against Zagorac in relation to the arrest at issue, the arrest may be expunged from his record only if he qualifies under this statute. *See id.*

A petition for expungement must be forwarded to all relevant law enforcement agencies. Ind.Code § 35–38–5–1(c) & 1(d). An agency that wishes to oppose the expungement "shall file a notice of opposition with the court setting forth reasons for resisting the expungement along with any sworn statements from individuals who represent the agency that explain the reasons for resisting the expungement within thirty (30) days after the petition is filed." *Id.* at 1(d). Agencies are required to serve their opposition on the petitioner. *Id.*

Thereafter, the trial court must determine whether to:

(1) summarily grant the petition;

(2) set the matter for hearing; or

(3) summarily deny the petition, if the court determines that:

   (A) the petition is insufficient; or

   (B) based on information contained in sworn statements submitted by individuals who represent an agency, the petitioner is not entitled to an expungement of records.

*Id.*

### 1. *Summary Denial of Petition*

■ Zagorac asserts he was entitled to a hearing before denial of his petition. Prior to addressing his specific arguments, we note our Supreme Court has held the expungement statute gives trial courts "almost unfettered discretion ... to deny summarily a petition for expungement without a hearing." *Arnold,* 906 N.E.2d at 171. The Court explained:

The animating principle behind subsection (d) seems to us to be trial court discretion in responding to a petition for expungement. As discussed *supra,* the court has discretion to grant the petition summarily without considering any statutory factors. The court also has discretion to deny the petition summarily if it finds the petition to be "insufficient" or finds that "the petitioner is not entitled to an expungement" based on information contained in sworn statements submitted by agency representatives. [I.C. § 35–38–5–1](d)(3). The trial court's discretion is further evidenced *by the Legislature's silence as to* when a petition is "sufficient" and *when a petitioner is or is not "entitled to an expungement" based on information submitted by agency representatives.* Only if a notice of opposition is filed and the trial court does not exercise its discretion to grant summarily or deny summarily a petition for expungement, must

---

**3.** Although Ind.Code § 35–38–5–1(a) lists three reasons why charges may have been dropped—mistaken identity; no offense was in fact committed; and an absence of probable cause—"dropping charges because of a mistaken identity or because no offense was in fact committed is the same as dropping the charges because there was no probable cause." *Kleiman v. State,* 590 N.E.2d 660, 663 n. 5 (Ind.Ct.App.1992), *reh'g denied.*

the court hold a hearing on the petition. *Id.* § (e).

*Id.* (emphasis added). In other words, whether summary denial· is appropriate based on agency affidavits was left to the discretion of the trial court. *Id.*

Zagorac claims "in order to give effect to the intent of the Legislature, the information in the sworn statements had to establish that there was probable cause," (Br. of Appellant at 8), but "the information contained in the statement of the agencies opposing the petition [is] . . . insufficient [to establish] that there was probable cause to try him for the charged crime." (*Id.*) We decline to adopt Zagorac's characterization of the Legislature's intent because it is inconsistent with the interpretation by our Supreme Court in *Arnold.* *See Arnold,* 906 N.E.2d at 171 ("The trial court's discretion is further evidenced by the Legislature's silence as to . . . when a petitioner is or is not 'entitled to an expungement' based on information submitted by agency representatives.").

Neither would such an interpretation be consistent with the Legislature's instruction to state agencies in the expungement statute:

> Any agency desiring to oppose the expungement shall file a notice of opposition with the court setting forth reasons for resisting the expungement along with any sworn statements from individuals who represent the agency that explain the reasons for resisting the expungement within thirty (30) days after the petition is filed.

Ind.Code § 35–38–5–1(d). Zagorac is asking that we read "the reasons for resisting expungement" to mean "the facts demonstrating probable cause." But if our Legislature wanted to require that agencies show probable cause, it could have written that requirement into the statute, as it did in other statutes. *See, e.g.,* Ind.Code § 35–33–7–2(a) ("At or before the initial hearing of a person arrested without a warrant for a crime, the facts upon which the arrest was made shall be submitted to the judicial officer, ex parte, in a probable cause affidavit."). The Legislature did not use such language, and we decline to graft such a requirement onto the statute.[4] *See N.D.F. v. State,* 775 N.E.2d 1085, 1088 (Ind.2002) (declining to graft definition from adult criminal statute onto juvenile statute because "it is just as important to recognize what the statute does not. say as it is to recognize what it does say").

Zagorac also argues: "Because the charge was dropped, no offense was committed and he satisfies that prong of the statute. Ind.Code § 35–38–5–1–(a)(2)(B)." (Br. of Appellant at 10.) The "prong of the statute" to which Zagorac refers indicates a person may petition for expungement if "all criminal charges filed against an individual are dropped because . . . no offense was in fact committed." I.C. § 35–38–5–1(a)(2)(B). We reject, as both contrary to logic and inconsistent with the statute, Zagorac's assertion that dismissal of a charge conclusively establishes innocence. A criminal charge could be dismissed for a host of reasons unrelated to

---

4. For this same reason, we reject the State's assertion at oral argument that the affidavit provided by the Lake County Prosecutor's Office was fatally flawed because it relied, in part, on a deputy prosecutor's "subjective belief" that Zagorac's charge was not dismissed for lack of probable cause. The statute does not indicate the kinds of "reasons" or "explanations" that must—or should not—be includ-

ed in the agency's notice of opposition or in the sworn statements in support thereof. *See* Ind.Code § 35–38–5–1(d) (Agency "shall file a notice of opposition with the court setting forth the reasons for resisting the expungement along with any sworn statements from individuals who represent the agency that explain the reasons for resisting the expungement.").

the defendant's culpability.[5] If Zagorac were correct that dismissal proves innocence, then expungement would be an automatic consequence of dismissal, rather than being restricted to only those defendants whose charges were dropped because identity was mistaken, no offense was committed, or probable cause was absent. *See* Ind.Code § 35–38–5–1(a)(2). We find no merit in Zagorac's assertion that the dismissal of the charge against him, without more, entitles him to expungement of the record of the arrest underlying that charge.

In denying Zagorac's motion to correct error, the trial court explained:

> Supervising Deputy Prosecuting Attorney Mary K. Ryan representing the Office of the Prosecuting Attorney of Lake County [filed a sworn statement]. Ms. Ryan affirms that the charges were not dropped for reasons delineated in I.C. 35–38–5–1. The Motion to Dismiss in the above-captioned cause indicates that the State dismissed the charges because, "[t]hough the State believes it can prove its case beyond a reasonable doubt, the child victim in this case has become physically ill because of his fear of testifying in the presence of the defendant and the State is unable to move forward with its case." Therefore, the charges were not dropped based on mistaken identity; the fact that no offense was in

fact committed; or because there was an absence of probable cause.

(App. at 51). Thus, the summary denial rested, ultimately, on the explanation provided in the State's motion to dismiss the charges against Zagorac, which motion also contains the signature of the trial court judge under the words ";SO ORDERED," (*id.* at 19), making that document the court's dismissal order.

Nothing in the record before us suggests Zagorac objected to or challenged the validity of the State's explanation for dismissing the charge against him when that explanation was presented in the underlying criminal action. (*Compare id.* at 18 (order indicating hearing held on State's motion to dismiss) *with id.* at 19 (judge signed order containing State's explanation for dismissal).) Nor did Zagorac challenge the validity of that explanation for dismissal in his Petition for Expungement or his Memorandum in Support of Defendant's Petition for Expungement.[6] (*See id.* at 14–17, 21–26.) As the trial court's decision to deny expungement was based on its reliance on the unchallenged explanation for dismissal contained in that court's own order dismissing the underlying action,[7] we cannot characterize the summary denial of Zagorac's petition for expungement as an abuse of the trial court's "almost unfettered discretion."[8] *See Arnold,* 906 N.E.2d at 171. Thus, the

5. Such reasons might include, for example, death of a necessary witness, loss of physical evidence, or expiration of the limitations period.

6. Although any such argument would have been waived for appeal based on his failure to raise it below, we note Zagorac also did not challenge the State's explanation in his brief on appeal. Rather, he asserts the State's explanation is "insufficient to establish the lack [sic] of probable cause." (Br. of Appellant at 9.) As we discussed above, neither the language of the expungement statute nor our Supreme Court's interpretation of that lan-

guage required the State to demonstrate probable cause in those sworn statements.

7. In a circumstance such as this, when the order dismissing the charge indicates it was dismissed for a reason unrelated to a defendant's culpability, an expungement petitioner faces a seemingly-insurmountable challenge of demonstrating to the trial court that its facially-valid dismissal order reached the proper result but included improper reasoning.

8. We also note that our review of Zagorac's petition uncovered no assertion by Zagorac

denial of Zagorac's motion to correct error also was not an abuse of discretion.[9]

### 2. Constitutional Challenge

▇ Zagorac also invites us to invalidate the expungement statute because it violates the privileges and immunities clause of the Indiana Constitution. That clause states: "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens." Ind. Const., Art. I, § 23.

▇ We presume statutes are constitutional, and the complaining party has the burden of overcoming that presumption. *Kleiman v. State,* 590 N.E.2d 660, 663 (Ind.Ct.App.1992), *reh'g denied.* "Legislative classifications may be made and valid laws may be enacted under the police power to protect the public health, public morals, public order, public safety or public welfare." *Id.* (quoting *Hanley v. State,* 234 Ind. 326, 333, 123 N.E.2d 452, 454 (1954), *reh'g denied* ). Legislation that distinguishes between classes of people is constitutional if the disparate treatment is "reasonably related to inherent characteristics [that] distinguish the unequally treated classes" and if the preferential treatment is "uniformly applicable and equally available to all persons similarly situated." *Collins v. Day,* 644 N.E.2d 72, 80 (Ind.1994).

---

that he did not touch the alleged victim. Rather, Zagorac asserted "he did not commit the offense alleged and/or no probable cause existed [because] Defendant lacked the requisite mental capacity to commit the crime as he has a naive understanding of social boundaries in teacher/student interactions." (App. at 15.) That explanation implies Zagorac might have touched the victim inappropriately, but was nonetheless innocent because he did not know it was wrong to do so. However, being too "naive" to understand the wrongfulness of inappropriately touching a child does not, *ipso facto,* demonstrate no crime was committed. *See, e.g., Hammond v. State,* 479 N.E.2d 629, 632 (Ind.Ct.App.1985) (affirming conviction of child molesting by 27–year–old who was mildly to moderately mentally retarded and functioned at a second to third grade level, because "[e]vidence of the intentional touching of the victim's genital area justified an inference that the defendant acted with the intent to arouse or gratify sexual desires").

9. Zagorac argued at length in his brief that the one-paragraph probable cause affidavit filed by the State on April 20, 2005, did not contain sufficient indicia of reliability to demonstrate probable cause for Zagorac's charge. As Zagorac did not assert the inadequacy of that affidavit in his petition to expunge or his memorandum in support thereof, we do not address that issue on appeal. *See Camm v. State,* 908 N.E.2d 215, 221 n. 3 (Ind.2009) (failing to object at trial waived issue for appeal), *reh'g denied.*

Waiver notwithstanding, we could not reverse on that basis. The question raised by the expungement petition is whether "all criminal charges filed against an individual are dropped because ... there was an absence of probable cause." Ind.Code § 35–38–5–1(a). Zagorac has not explained why the existence of probable cause at the time the charge was dropped would depend solely on the existence of probable cause in an affidavit filed two and one half years earlier. Assuming *arguendo* that affidavit did not establish probable cause, it would not necessarily mean the State lacked probable cause when the charges were dismissed.

Furthermore, the one-paragraph affidavit about which Zagorac complains was not, in fact, the probable cause affidavit that was filed in support of his charging information. The one-paragraph affidavit was generated following Zagorac's request for a protective order to seal the original probable cause affidavit because it contained detailed information regarding allegations of "several other incidents" in which Zagorac behaved inappropriately toward other children and, therefore, was generating a large amount of press coverage. (*See* Supp.App. at 2–4) (original Probable Cause Affidavit filed with Information on March 23, 2005); *id.* at 13–14 (Motion for Protective Order filed April 8, 2005); *id.* at 18 (Order granting State's motion to substitute the redacted affidavit).

Zagorac notes that, although he was not convicted, the expungement statute does not permit removal of the arrest from his criminal record unless the trial court finds the charge was dropped for a lack of probable cause. But at the same time, he notes Indiana Code § 35–38–5–5 permits a convicted person to limit access to any history of arrest and conviction by filing a request with the police department if more than fifteen years have passed since completing the sentence for the last conviction.[10] Zagorac argues:

> The distinction between those who have charges dropped and those who have been convicted serves no rational pur-

10. The statute to which Zagorac compares the expungement statute provides:

(a) This section does not apply to a request to a law enforcement agency for the release or inspection of a limited criminal history to a noncriminal justice organization or individual whenever the subject of the request is described in IC 10–13–3–27(a)(8) [when the person "has volunteered services that involve contact with, care of, or supervision over a child who is being placed, matched, or monitored by a social services agency or a nonprofit corporation"] or IC 10–13–3–27(a)(12) [when the person "is being sought by the parent locator service of the child support bureau of the department of child services"].

(b) A person may petition the state police department to limit access to the person's limited criminal history to criminal justice agencies if more than fifteen (15) years have elapsed since the date the person was discharged from probation, imprisonment, or parole (whichever is later) for the last conviction for a crime.

(c) When a petition is filed under subsection (b), the state police department shall not release limited criminal history to noncriminal justice agencies under IC 10–13–3–27.

Ind.Code § 35–38–5–5. As used in that statute, limited criminal history "means information with respect to any arrest or criminal charge, which must include: (1) a disposition; and (2) a photograph of the person who is the subject of the limited criminal history, if a photograph is available." Ind.Code § 10–13–3–11.

That statute interacts with Indiana Code Section 10–13–3–27, which provides:

(a) Except as provided in subsection (b), on request, a law enforcement agency shall release a limited criminal history to or allow inspection of a limited criminal history by noncriminal justice organizations or individuals *only if the subject of the request:* [meets one of the enumerated criteria].

However, limited criminal history information obtained from the National Crime Information Center may not be released under this section except to the extent permitted by the Attorney General of the United States.

(b) A law enforcement agency shall allow inspection of a limited criminal history by and release a limited criminal history to the following noncriminal justice organizations:

(1) Federally chartered or insured banking institutions.

(2) Officials of state and local government for any of the following purposes:

(A) Employment with a state or local governmental entity.

(B) Licensing.

(3) Segments of the securities industry identified under 15 U.S.C. 78q(f)(2).

(c) Any person who knowingly or intentionally uses limited criminal history for any purpose not specified under this section commits a Class A misdemeanor.

(emphasis added).

Thus, unless subsection (a) of Indiana Code § 35–38–5–5 disqualifies a convicted person from the relief offered in that statute (because he or she volunteered to have contact with a child affiliated with a social services agency or nonprofit corporation, or because he or she is being sought by the child support bureau), a convicted person can prohibit *all* noncriminal justice organizations (including those listed in subsection (b) of Indiana Code § 10–13–3–27) from knowing about a prior conviction by filing a request fifteen years after being discharged from the sentence that ended most recently. It is not apparent whether our Legislature intended those organizations listed in subsection (b) of Ind. Code § 10–13–3–27 be unable to obtain access to criminal history information following a petition to limit access pursuant to Ind.Code § 35–38–5–5(b), but that appears to be the result of the current statutory structure.

pose, makes no valid distinction and can hardly be considered to protect the public welfare. Why should one with a conviction be granted relief as opposed to one who as not been convicted[?]

(Br. of Appellant at 15.)

We cannot agree with Zagorac's assertion that it is always irrational to distinguish between persons who have been convicted and those who have not. *See, e.g., Lewis v. State,* 898 N.E.2d 1286, 1290 (Ind. Ct.App.2009) ("Unlike the post-sentence home detainee, who *has been convicted* of a crime, Lewis had not been convicted at the time of his pretrial home detention. Lewis remained clothed with the precious presumption of innocence.") (emphasis in original), *reh'g denied, trans. denied.*

We do, however, agree with Zagorac that it seems counter-intuitive to provide a form of relief to convicted persons when that relief is unavailable to persons who have not been convicted, and we too wonder how such disparate treatment could be related rationally to the characteristics that distinguish persons with and without convictions.

██ Nevertheless, we do not address constitutional arguments that are raised for the first time on appeal. *See Mahl v. Aaron,* 809 N.E.2d 953, 958 (Ind.Ct.App. 2004) (declining to address equal protection argument under Indiana Constitution when argument at trial was based only on federal constitution). Our review of the record before us uncovered no indication that Zagorac raised this issue in his petition for expungement or in his response to the State's opposition to expungement. Accordingly, he has waived this allegation of error for appeal.[11]

## CONCLUSION

Because Zagorac has not demonstrated the trial court abused its almost unfettered discretion in denying his petition for expungement and because Zagorac waived his equal protection argument by failing to raise it below, we affirm the denial of Zagorac's motion to correct error, which challenged the summary denial of his petition for expungement.

Affirmed.

ROBB, C.J., and BROWN, J., concur.

---

11. We also note a convicted person may not limit access to criminal history until fifteen years after discharge from his or her most recent conviction. *See* Ind.Code § 35–38–5–5. If a person had been convicted of Class C felony child molesting on the same day Zagorac's charge was dismissed, and if that person had received a two-year minimum sentence, which had already been served in pre-trial confinement, that person would not be eligible for relief until October of 2022, assuming there were no other convictions. Thus, it seems inconceivable that any person who had been convicted of Zagorac's crime on the day the charges against Zagorac were dismissed

would have access, at this time, to relief that is unavailable to Zagorac.

