# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**JULIA BLACKWELL GELINAS**
**ANTHONY W. OVERHOLT**
**MAGGIE L. SMITH**
**EMILY K. CREMEANS**
Frost Brown Todd LLC
Indianapolis, Indiana

**AMANDA J. GRIFFITH**
**BRANDON P. ELWARD**
Office of Corporation Counsel
City of Indianapolis

ATTORNEY FOR APPELLEE:

**MICHAEL E. MORKEN**
Indianapolis, Indiana



FILED
May 29 2014, 10:22 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

INDIANAPOLIS METROPOLITAN POLICE )
DEPARTMENT, )
)
    Appellant-Respondent, )
)
        vs. )    No. 49A04-1305-CR-236
)
DONALD A. PROUT, )
)
    Appellee-Petitioner. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Annie Christ-Garcia, Judge
Cause No. 49F24-1204-FD-22330

**May 29, 2014**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Donald A. Prout, a full-time deputy with the Marion County Sheriff's Office ("MCSO"), also worked security part time at a grocery store and a bus station. An MCSO detective was asked to investigate accusations that Prout was being paid by MCSO while he was working his other jobs. The detective obtained documents from MCSO and Prout's other employers indicating that his work schedules overlapped on four occasions. Prout was asked to explain the discrepancies, but he refused. The detective filed a probable cause affidavit, which resulted in Prout being charged with four counts of class D felony theft. Those charges were later dismissed due to unspecified evidentiary problems.

Prout filed a petition to expunge his arrest record, asserting that the charges against him were dropped because no offense was committed and there was no probable cause. The Indianapolis Metropolitan Police Department ("IMPD") objected to Prout's petition. At a hearing on the petition, Prout presented evidence that his work schedules had not overlapped. The trial court issued an order granting Prout's petition, finding that he had committed no offense and that no probable cause existed to support either the filing or the prosecution of the charges.

On appeal, IMPD argues that the issue of whether probable cause existed to file charges is irrelevant and that Prout failed to carry his burden to establish that no probable cause existed when the charges were dismissed and that no offense was committed. We conclude that the trial court did not abuse its discretion in concluding that no offense was committed and therefore affirm.

## Facts and Procedural History[1]

Prout was hired by MCSO in 2006 and was a member of the STAR Team, which "would assist in serving particularly dangerous warrants." Tr. at 15. In 2011, the commanding officer of MCSO's criminal investigation section, Captain Michael Hubbs, asked Detective Sergeant (now Lieutenant) Wayne Sharp to investigate accusations that Prout "was being paid by the Sheriff's Department while working at other places[.]" *Id*. at 182. In addition to working full time for MCSO, Prout worked security part time for Kroger and Greyhound Bus Lines. Lieutenant Sharp obtained documents regarding Prout's work schedules at MCSO, Kroger, and Greyhound. Official MCSO time cards signed by both Prout and his supervisor, Sergeant Kenny Sanders, indicated that Prout worked his normal 3:00 p.m.-to-11:00 p.m. shift on October 27, 2011, and February 6, 7, and 27, 2012. Respondent's Ex. 1-3. A document from Kroger indicated that Prout worked from 4:53 p.m. to 12:00 a.m. on October 27, 2011. Respondent's Ex. 6. A document from Greyhound indicated that Prout worked from 8:30 a.m. to 4:00 p.m. on February 6, from 12:00 p.m. to 4:00 p.m. on February 7, and from 8:00 a.m. to 4:00 p.m. on February 27. Respondent's Ex. 7A.

Lieutenant Sharp also obtained Prout's computer-assisted dispatch ("CAD") records, which indicate an officer's location and activity (such as "marking" on and off duty) as recorded by the officer on a computer. The computer does not verify the officer's actual

---

[1] We heard oral argument on April 10, 2014, at Indiana University South Bend. We thank counsel for their participation and the school for its hospitality.

location or activity, however. At the expungement hearing, Prout acknowledged that the CAD system could have allowed him to "be at the Greyhound [station] and mark on duty with the Sheriff's Department[.]" *Id.* at 96. Prout's CAD record for October 27, 2011, indicated that he marked on duty at 7:49 a.m. at MCSO's training facility on North Post Road and apparently marked himself out of his vehicle ("OUTVEH") at 4:48 p.m. Petitioner's Ex. I.

Based on the discrepancies among these documents, Lieutenant Sharp "concluded that there was overlapping hours and double play [sic]." Tr. at 188. Lieutenant Sharp attempted to discuss the discrepancies with Prout, who "said he had counsel and didn't want to visit with [him]." *Id.* at 191. On April 4, 2012, Lieutenant Sharp drafted a probable cause affidavit that reads in pertinent part as follows:

> Deputy Prout aside from his regular duties at the Marion County Sheriff's Office, works part time jobs. One job is for Kroger's Grocery and one for the Greyhound Bus Station.
>
> Records for the MCSO and for the employers shows that for some hours, Prout was getting paid by two places at the same time.
>
> Records show that on October 27, 2012 [sic] Prout[']s records show he was in training at the Academy for eight hours. Kroger records show Prout was working from 4:35 [sic] PM till Midnight for Krogers. Prout did not attend classes for the MCSO that day.
>
> On February 6, 2012, records show that Prout worked 3:00 PM till 11 PM on the MCSO but also worked 12:00 PM till 4:00 PM at Greyhound Bus Security. On February 7, 2012, records, [sic] showed Prout got off duty at the MCSO [sic] at 4:00 PM but started work at Greyhound [sic] at 3:00 PM.
>
> Finally on February 27, 2012, Prout started work at the MCSO at 3:00 PM but worked till 4:00 PM at Greyhound.

> Losses for the MSCO [sic] come to $185.00 in which Donald Prout was supposed to be on duty for the department, but was actually working for part time employers.
>
> On March 28, 2012, Donald Prout failed to show for an interview.
>
> Deputy Prout is assigned to the MCSO Warrant Division during his regular work hours. Documentation and records from both the MCSO and private employers shows [sic] a pattern of overlapping hours and getting paid by two employers at the same time.

Petitioner's Ex. G1. Judge Annie Christ-Garcia signed the affidavit, indicating a finding of probable cause.

That same day, Prout was charged with four counts of class D felony theft. *See* Ind. Code § 35-43-4-2(a) ("A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony."). The charging information alleged that on each of the aforementioned dates, Prout "did knowingly exert unauthorized control over the property, that is: United States currency, of the Marion County Sheriff's Office, with intent to deprive the Marion County Sheriff's Office of any part of the value or use of said property[.]" Petitioner's Ex. G1. Prout was arrested sometime before April 12. On September 7, 2012, a deputy prosecutor filed a motion to dismiss all charges against Prout, citing "Evidentiary Problems" as the reason for dismissal without further explanation. Petitioner's Ex. H. Judge Christ-Garcia granted the motion.

On December 19, 2012, Prout filed a verified petition for expungement of arrest record pursuant to Indiana Code Section 35-38-5-1,[2] which reads as follows:

(a) Whenever:
    (1) an individual is arrested but no criminal charges are filed against the individual; or
    (2) all criminal charges filed against an individual are dropped because:
        (A) of a mistaken identity;
        (B) no offense was in fact committed; or
        (C) there was an absence of probable cause;
the individual may petition the court for expungement of the records related to the arrest.

(b) A petition for expungement of records must be verified and filed in the court in which the charges were filed, or if no criminal charges were filed, in a court with criminal jurisdiction in the county where the arrest occurred. The petition must set forth:
    (1) the date of the arrest;
    (2) the charge;
    (3) the law enforcement agency employing the arresting officer;
    (4) any other known identifying information, such as the name of the arresting officer, case number, or court cause number;
    (5) the date of the petitioner's birth; and
    (6) the petitioner's Social Security number.

(c) A copy of the petition shall be served on the law enforcement agency and the state central repository for records.

(d) Upon receipt of a petition for expungement, the law enforcement agency shall notify the court of the name and address of each agency to which any records related to the arrest were forwarded. The clerk shall immediately send a copy of the petition to each of those agencies. Any agency desiring to oppose the expungement shall file a notice of opposition with the court setting forth reasons for resisting the expungement along with any sworn statements from individuals who represent the agency that explain the reasons for resisting the expungement within thirty (30) days after the petition is filed. A copy of the notice of opposition and copies of any sworn statements shall be

---

[2] Indiana Code Section 35-38-5-1 was repealed in March 2014 upon passage of House Enrolled Act ("HEA") 1155. The statutes revised or created by HEA 1155 do not mention probable cause or the other options listed in Indiana Code Section 35-38-5-1(a)(2).

served on the petitioner in accordance with the Rules of Trial Procedure. The court shall:

> (1) summarily grant the petition;
> (2) set the matter for hearing; or
> (3) summarily deny the petition, if the court determines that:
> > (A) the petition is insufficient; or
> > (B) based on information contained in sworn statements submitted by individuals who represent an agency, the petitioner is not entitled to an expungement of records.

> (e) If a notice of opposition is filed and the court does not summarily grant or summarily deny the petition, the court shall set the matter for a hearing.

> (f) After a hearing is held under this section, the petition shall be granted unless the court finds:
> > (1) the conditions in subsection (a) have not been met;
> > (2) the individual has a record of arrests other than minor traffic offenses; or
> > (3) additional criminal charges are pending against the individual.

In his petition, Prout asserted that the charges against him "were dropped because no offense was in fact committed and there was an absence of probable cause." Appellant's App. at 5. IMPD filed a verified objection and notice of opposition to Prout's petition, asserting that the State dismissed the charges "due to evidentiary problems and not one of the statutory reasons for which and [sic] expungement is permitted." *Id*. at 8.

On February 13, 2013, the trial court held a hearing on Prout's petition. At the hearing, Prout testified that he was ordered to attend a STAR Team training session at the Post Road facility on October 27, 2011, from 8:00 a.m. to 4:00 p.m., instead of working his regular shift. Prout offered into evidence a text message from Deputy Justin Kaufman dated October 26, 2011, reminding him about the training session. Petitioner's Ex. L. Prout testified that he attended the entire session. Sergeant Sanders testified that he and Prout were

7

at the session all day, as did Deputy Brad Allen and Deputy Gregory McWhirter, the training coordinator. Prout offered into evidence Deputy McWhirter's and Sergeant Sanders's CAD records, which showed that they marked on at the Post Road facility before 8:00 a.m. on October 27. Deputy McWhirter's CAD record showed that he stayed at the facility all day. Petitioner's Ex. B. Sergeant Sanders's CAD record showed that he marked in at the Post Road facility at 7:20 a.m., marked off at 7:47 a.m., and then marked on at MCSO's headquarters on South Alabama Street less than a minute later. Petitioner's Ex. C. Prout also offered into evidence a computer-generated training roster, which indicated the date and title of the training session and listed the names of the attendees, including Prout, Sergeant Sanders, and Deputies Allen and McWhirter. Petitioner's Ex. U.

Major Scott Mellinger, director of MCSO's training section, expressed "concern" that the roster had not been signed and hand-dated by Deputy McWhirter to affirm that "the information contained [on the roster was] complete and accurate to the best of [his] knowledge and belief." Tr. at 116; Petitioner's Ex. U. Evidence was presented that Deputy McWhirter had signed and dated rosters for other training sessions, Petitioner's Ex. U, and Deputy McWhirter acknowledged that he had "apparently" failed to make a hard copy of the roster or email it to the training facility receptionist after the session, as was his custom. Tr. at 131-32. Deputy McWhirter's testimony suggests that he did not become aware of these oversights until after Lieutenant Sharp asked him if he "had any training records[.]" *Id.* at 130. According to Lieutenant Sharp, he did not ask Deputy McWhirter for the records until after Prout was arrested. *Id.* at 210.

Captain Hubbs also expressed "concerns" about the roster and testified that several deputies who had attended the training session stated that they did not remember if Prout was there. *Id*. at 141. He acknowledged, however, that he had appeared at the training session for half an hour to an hour and saw Prout there. *Id*. at 144-45.[3] He also acknowledged that Lieutenant Sharp never specifically asked him if Prout had attended the session. Deputies McWhirter and Allen and Sergeant Sanders testified that Lieutenant Sharp did not ask them if Prout had attended the session until after Prout was arrested.

Prout acknowledged that he signed an official time card indicating that he worked from 3:00 p.m. to 11:00 p.m. instead of 8:00 a.m. to 4:00 p.m. on October 27, 2011, and therefore received a "shift differential" of seventy cents per hour (totaling $5.60) to which he would not have been entitled for the earlier shift. *Id*. at 27. Prout testified that he "space[d]" changing his time card to reflect the actual hours of the training session. *Id*. at 83. He also testified that he worked at Kroger from "[j]ust before 5:00 [p.m.] up until midnight." *Id*. at 25. Sergeant Sanders acknowledged that he approved Prout's time card even though Prout did not actually work from 3:00 p.m. to 11:00 p.m. *Id*. at 167.

Regarding the February 2012 allegations, Prout testified that his supervisor at Greyhound, IMPD Sergeant Kevin Bandy, would let him leave before the scheduled 4:00 p.m. end of his shift at Greyhound to report for his 3:00 p.m. shift at MCSO, and then he

_____

[3] Prout testified that Captain Hubbs met with the STAR Team at the end of the training session from approximately 4:00 p.m. to 4:30 p.m. Tr. at 35.

would make up that time on another shift. Prout offered into evidence an affidavit from Sergeant Bandy that reads in pertinent part as follows:

> 2.    I am now the Director of security for Greyhound Bus Lines and I held this position and employment with Greyhound Bus Lines on February 6, 2012, February 7, 2012 and February 27, 2012.
>
> 3.    That Donald Prout was employed or contracted by Greyhound Bus Lines (and myself) to provide security services for the Greyhound Bus Station [in Indianapolis].
>
> 4.    That while Donald Prout was working security on February 6, 2012, February 7, 2012, and February 27, 2012, he reported to me the hours that he had worked for these days, and he was paid for those hours on those days as reported.
>
> 5.    That as Director of Security I would permit, on occasion, in 2012 our security officers, (including Donald Prout) to leave the Greyhound Bus Station and their security duties. I would permit and have permitted Donald Prout to leave the Greyhound Bus Station when Donald Prout was called upon to work at his primary employment with the Marion County Sheriff's Office.

Petitioner's Ex. T. Lieutenant Sharp acknowledged that he did not ask Sergeant Bandy if he let Prout leave Greyhound to begin his shift with MCSO. When asked if he thought "that might have been an important question to ask[,]" Lieutenant Sharp replied, "I think they should have put down the correct hours that he worked, whatever it is." Tr. at 213.

Prout also offered into evidence CAD records showing that on February 6, 2012, he marked off duty at Greyhound at 2:57 p.m. and marked on duty at MCSO's Concord Office at 2:59 p.m. Petitioner's Ex. M. He served a warrant from Shelby County during his shift; the last CAD entry for that date is 10:33 p.m. Petitioner's Exs. M and S. Prout testified that on February 7, 2012, he was scheduled to work at Greyhound from noon until 4:00 p.m., but he "was there for about an hour before [he] was forced to leave" for a "mandatory meeting"

10

at 1:00 p.m. at MCSO's headquarters on South Alabama Street. Tr. at 66, 62. He testified that after the meeting, he participated in approximately an hour and a half of physical fitness training at the Post Road facility and then went on duty until "[j]ust after midnight." *Id*. at 66. Prout supported this testimony with a CAD record for that date. Petitioner's Ex. N. As for February 27, 2012, Prout testified that he left his Greyhound shift early and stopped at Riverside Garage just after 3:00 p.m. to have his vehicle's headlight fixed. Just after 4:00 p.m., he picked up warrants at the Concord Office and served them. Again, Prout supported this testimony with a CAD record for that date. Petitioner's Ex. O.

Captain Hubbs testified that he ordered several STAR Team members, including Deputies Kaufman, McWhirter, and Allen and Sergeant Sanders, to be interviewed by Lieutenant Sharp on April 12, 2012. According to Captain Hubbs, "There were frankly different statements given by different deputies.… [T]hey didn't all say the same thing and that's the problem we had with the one particular date [October 27, 2011]." Tr. at 157. Lieutenant Sharp opined that the deputies are "loyal to each other, that they count on each other for their lives, they defend each other no matter what." *Id*. at 208-09. He further opined that time cards are "chiseled in granite" and that "[y]ou've got to sign the card exactly showing when you worked." *Id*. at 198, 212. Also, Lieutenant Sharp acknowledged that the probable cause affidavit contained several typographical errors.

On March 19, 2013, the trial court issued an order that reads in pertinent part as follows:

> [T]he Court, after having received evidence at the hearing on February 13, 2013, and after due consideration, now finds that no offense was actually

11

committed by Prout and there was an absence of probable cause to support the filing of the criminal (theft) charges against Prout in this cause ….

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that there was no offense actually committed by Donald Prout and that there was no probable cause for the issuance of the warrant and the prosecution of theft against Donald A. Prout in the above entitled cause of action,

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that the Petition for Expungement filed by [Prout] is hereby granted pursuant to Indiana Code §35-38-5-1.

Appellant's App. at 2. IMPD filed a motion to correct error, which the trial court denied. This appeal followed.

**Discussion and Decision**

Indiana Code Section 35-38-5-1 is "the 'exclusive means' for expunging arrest records when no charges were filed or the charges were dropped." *Zagorac v. State*, 943 N.E.2d 384, 389 (Ind. Ct. App. 2011) (quoting *State ex rel. Ind. State Police v. Arnold*, 906 N.E.2d 167, 169 (Ind. 2009)). "The petitioner bears the burden of proof when requesting the expungement of his record." *State v. Sotos*, 558 N.E.2d 909, 911 (Ind. Ct. App. 1990), *trans. denied* (1991). We review a trial court's ruling on a petition for expungement for an abuse of discretion. *See Arnold*, 906 N.E.2d at 171 ("We do not believe that the Legislature intended to give the trial court almost unfettered discretion to grant summarily or to deny summarily a petition for expungement without a hearing, only to take away that discretion completely when the court decides to conduct a fact-finding hearing.") (citation omitted).

IMPD first argues that "the trial court erred in drawing any conclusions as to whether there was probable cause to issue the arrest warrant …. because the appropriate frame of

12

reference under §35-38-5-1 deals with whether probable cause exists when the charges are dropped—not when the arrest warrant is issued." Appellant's Br. at 9. We need not address this argument, however, because we conclude that the trial court did not abuse its discretion in concluding that no offense was committed.[4]

IMPD points out the numerous conflicts in the testimony and documents regarding Prout's work hours as evidence that Prout failed to carry his burden and says,

> even assuming that all of Deputy Prout's testimony regarding his erroneous reporting of hours is true, Deputy Prout admitted under oath that he was paid more than was due to him because his paycheck included a shift differential pay increase for working the middle and late shifts—shifts he admits he never worked. As a result, he admitted that he knowingly received money from the Sheriff's Office that he was not entitled to receive and that he kept that money.
>
> And while this additional compensation that he kept is not a substantial amount, there is no exception for the crime charged if the theft is *de minimis*. The crime for which Deputy Prout was charged is that he "knowingly or intentionally exert[ed] unauthorized control over property of another person ["Currency of the Marion County Sheriff's Office"], with intent to deprive the other person of any part of its value or use." IND. CODE § 35-43-4-2(a).
>
> Deputy Prout's own admissions at the expungement hearing show that these elements are met. The fact that unknown "Evidentiary Problems" led the State to eventually dismiss the charges against Deputy Prout does not support the trial court's grant of Deputy Prout's Verified Petition for Expungement.

*Id*. at 17 (citations to record omitted).

We note, however, that Prout received the shift differential pay increase only for October 27, 2011. Moreover, as Prout correctly observes, the theft charges were not based

---

[4] Because the legislature has repealed Indiana Code Section 35-38-5-1 and probable cause is no longer a consideration in expungement proceedings, and because we decide this case on other grounds, we express no opinion on the trial court's findings regarding probable cause.

13

on his receipt of the pay increase, but rather "for not working at all for MCSO on October 27, 2011, and working less than required of him on each of the three days in February, 2012." Appellee's Br. at 16. We agree with Prout that "IMPD's new arguments about shift differential were never charges brought against him and thus are improper grounds for opposing the expungement." *Id*.

To the extent that IMPD challenges the sufficiency of the evidence supporting the trial court's determination that no offense was committed, we note that we may neither reweigh evidence nor judge witness credibility and may "consider only the evidence most favorable to the judgment. We will not reverse the trial court's decision where there is substantial evidence of probative value supporting the judgment." *Sotos*, 558 N.E.2d at 912. As indicated by our recitation of the evidence adduced at the expungement hearing, the trial court's judgment is supported by substantial evidence of probative value. Therefore, we affirm.

Affirmed.

MAY, J., and BRADFORD, J., concur.