

FILED

Mar 23 2026, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Angela Holtswarth,

*Appellant-Petitioner*

v.

Eric M . Oliver, Personal Representative for the Estate of Darryl Lee Cook,

*Appellee-Respondent*

---

March 23, 2026

Court of Appeals Case No.
25A-EU-1580

Appeal from the Hendricks Superior Court

The Honorable Rhett M. Stuard, Judge

Trial Court Cause No.
32D02-2503-EU-88

---

**Opinion by Judge Foley**
Judges May and Altice concur.

**Foley, Judge.**

Angela Holtswarth ("Holtswarth") appeals the trial court's denial of her petition to determine heirship under the unsupervised estate of Darryl Lee Cook ("Cook"), her putative father. Holtswarth raises the following two restated issues for our review:

> I. Whether the trial court erred when it denied her request for a hearing on her petition pursuant to Indiana Code section 29-1-17-15.1; and

> II. Whether the trial court abused its discretion when it denied her motion to reconsider because she contends that it erred in its interpretation of Indiana Code section 29-1-2-7.

We affirm.

## Facts and Procedural History

Prior to 2022, Holtswarth was not aware of her father's identity as no name was listed on her birth certificate. In early 2022, Holtswarth, who was approximately fifty years old at the time, completed ancestry testing through 23andMe and found a match with a nephew, who is the son of Courtney Summers ("Summers"). Holtswarth made contact with Summers through social media and eventually connected directly with Cook, who was the father of Summers. Cook had two other acknowledged daughters at that time, Christa Spinks ("Spinks") and Sandra Horn-Pay, who was deceased. Eventually, Holtswarth and Cook made contact directly, and over the next several years,

they maintained contact over the phone and in person, with each of them traveling to the other's home. On March 5, 2022, Holtswarth had DNA testing done that established that she is the biological child of Cook. However, paternity was never established in any court of competent jurisdiction.

[4] Cook died on February 24, 2025. On March 17, 2025, Holtswarth filed a Petition to Appoint Personal Representative and for Issuance of Letters, requesting that she be named the personal presentative of Cook's estate and stating she was uncertain if Cook had a will or died intestate. On the same date, the trial court signed an order appointing Holtswarth as personal representative of Cook's estate. On April 1, 2025, Summers sent a letter to the trial court that asserted that there was a will for Cook and attached the will. Summers objected to Holtswarth being appointed as the personal representative of Cook's estate. On the same date, the trial court issued an order removing Holtswarth as personal representative and appointed Eric Oliver ("Oliver"), an attorney, as the personal representative.

[5] Cook's will was executed on June 1, 2022, and only named Summers and Spinks as Cook's heirs. On May 6, 2025, the trial court issued an order probating Cook's will. On May 15, 2025, Holtswarth filed a Verified Petition to Determine Heirship, Objection to Probate of Will, and Request for Instructions and Payment of Fees, in which she objected to the "probate of the document submitted by . . . Summers as . . . Cook's purported last will and testament." Appellant's App. Vol. II p. 30. She alleged that the will was not valid, asserting that the "dates have been marked out" and one of the witnesses

appeared to be Summers's boyfriend who Holtswarth alleged lived in the home of Cook and was not "paying any rent." *Id*. at 30–31. Holtswarth further alleged that, at the time Cook "purportedly signed this document, he was suffering [from] cognitive impairments that inhibited his ability to understand the nature and provisions of the document." *Id*. at 31. In her petition, Holtswarth requested that she be compensated by the estate for the expenses and fees she incurred prior to her removal as personal representative and that the matter be set for a hearing to determine the rightful heirs of Cook pursuant to Indiana Code section 29-1-17-15.1.

[6] The trial court did not schedule a hearing and denied Holtswarth's petition. On May 27, 2025, Holtswarth filed a motion to reconsider, in which she requested that the trial court reconsider her request "to establish paternity in order to determine her heirship in the decedent's estate" and set a hearing on the matter. *Id*. at 36. The trial court denied her motion to reconsider. Holtswarth now appeals.

## Discussion and Decision

[7] Holtswarth appeals from the trial court's denial of her motion to reconsider its previous ruling denying her petition to determine heirship. "Our standard of review in evaluating a trial court's reconsideration of its prior ruling is abuse of discretion." *Mitchell v. 10th and The Bypass, LLC*, 3 N.E.3d 967, 970 (Ind. 2014) (citing *In re Est. of Hammar,* 847 N.E.2d 960, 962 (Ind. 2006)). An abuse of discretion occurs when the trial court's decision is against the logic and effect of

the facts and circumstances before it. *Id*. A trial court also abuses its discretion when it misinterprets the law. *Id*. (citing *State v. Econ. Freedom Fund,* 959 N.E.2d 794, 800 (Ind. 2011)).

[8] In arguing that the trial court improperly denied her motion to reconsider, Holtswarth contends that the trial court misinterpreted certain statutes. When a case hinges on statutory interpretation, we review it under a de novo standard. *Mi.D. v. State*, 57 N.E.3d 809, 811 (Ind. 2016). This is because issues of statutory interpretation are pure questions of law. *Nicoson v. State*, 938 N.E.2d 660, 663 (Ind. 2010). "The primary purpose in statutory interpretation is to ascertain and give effect to the legislature's intent." *State v. Oddi-Smith*, 878 N.E.2d 1245, 1248 (Ind. 2008). The best evidence of legislative intent is the language of the statute itself, and we give the words used their plain and ordinary meaning. *Id.* We examine the statute as a whole and avoid "excessive reliance upon a strict literal meaning or the selective reading of individual words." *Id.* We presume "the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Id.*

## I.    Denial of a Hearing

[9] Holtswarth first argues that the trial court erred when it failed to hold a hearing pursuant to Indiana Code section 29-1-17-15.1(c) on her petition to establish heirship. She contends that, under that statute, the trial court was required to

set the matter for a hearing after she filed the petition. Indiana Code section 29-1-17-15.1 provides in pertinent part:

> (a) Whenever any person has died leaving property or any interest in property and no general administration has been commenced on the person's estate in this state, nor has any will been offered for probate in this state, within five (5) months after the person's death, any person claiming an interest in such property as heir or through an heir may file a petition in any court which would be of proper venue for the administration of such decedent's estate, to determine the heirs of said decedent and their respective interests as heirs in the estate.
>
> . . . .
>
> (c) Upon the filing of the petition, the court shall fix the time for the hearing, thereof, . . . .

Ind. Code § 29-1-17-15.1(a), (c).

Here, Cook died on February 24, 2025, and Holtswarth filed her petition to determine heirship on May 15, 2025. Although she filed her petition within five months of Cook's death pursuant to the statute, the statute only applies where the decedent dies intestate or no will has been filed for probate. Cook's will was filed with the trial court on April 1, 2025, and on May 6, 2025, the trial court issued an order probating Cook's will. Considering the plain language of the statue, the trial court was not required to set Holtswarth's petition for a hearing under the statute because she failed to meet one of the conditions precedent to the filing of an heirship petition, namely that a will had not been

offered for probate.  Therefore, the trial court did not err when it declined to set a hearing for Holtswarth's petition to determine heirship.

## II.    Interpretation of Deadlines to Establish Parentage

[11]    Holtswarth next argues that the trial court erred in denying her motion to reconsider its denial of her petition to determine heirship.  She asserts that the trial court's interpretation of Indiana Code section 29-1-2-7 was erroneous and in conflict with the legislative intent of the statute.  Holtswarth also argues that age limitations on adult children to establish parentage in their deceased parents are unconstitutional and against public policy.

[12]    Indiana Code section 29-1-2-7 states in relevant part:

> (b) For the purpose of inheritance (on the paternal side) to, through, and from a child born out of wedlock, the child shall be treated as if the child's father were married to the child's mother at the time of the child's birth, if one (1) of the following requirements is met:
>
>> (1) The paternity of a child who was at least twenty (20) years of age when the father died has been established by law in a cause of action that is filed during the father's lifetime.
>>
>> (2) The paternity of a child who was less than twenty (20) years of age when the father died has been established by law in a cause of action that is filed:
>>
>>> (A) during the father's lifetime; or

(B) within five (5) months after the father's death.

(3) The paternity of a child born after the father died has been established by law in a cause of action that is filed within eleven (11) months after the father's death.

(4) The putative father marries the mother of the child and acknowledges the child to be his own.

(5) The putative father executed a paternity affidavit in accordance with IC 31-6-6.1-9(b) (before its repeal).

(6) The putative father executes a paternity affidavit as set forth in IC 16-37-2-2.1.

I.C. § 29-1-2-7(b). Here, in denying Holtswarth's motion to reconsider, the trial court held that section 29-1-2-7 "establish[es] a hard deadline for individuals over the age of [twenty] to establish paternity . . . [and t]hat is prior to the death of the putative father. [Holtswarth] did not satisfy this requirement." Appellant's App. Vol. II p. 38.

[13] The evidence established that Holtswarth was over the age of twenty when Cook died and when she filed her petition to determine heirship. There is no evidence in the record that paternity was ever legally established prior to Cook's death. Likewise, Holtswarth makes no contention that paternity was ever legally established. Therefore, Holtswarth was disqualified for purposes of inheritance under the plain language of Indiana Code section 29-1-2-7 because she was over twenty years old when Cook died, paternity was never established

during Cook's lifetime, and although she filed a petition to establish heirship within five months of Cook's death, she was not under the age of twenty when Cook died.

[14] Holtswarth asserts that, despite the plain language of the statute, the trial court's interpretation of Indiana Code section 29-1-2-7 conflicts with the legislative intent behind the statute. In support of her argument, she relies on *Woods v. Harris*, 600 N.E.2d 163 (Ind. Ct. App. 1992), and *Regalado v. Estate of Regalado*, 933 N.E.2d 512 (Ind. Ct. App. 2010), and the 1953 Comments of the Indiana Probate Code Commission.

[15] In *Woods*, a forty-eight-year-old woman was permitted to file a petition to establish paternity when the petition was filed within five months of the putative father's death. 600 N.E.2d at 164. However, at the time *Woods* was decided, Indiana Code section 29-1-2-7(b) did not contain the age restriction limiting the filing of a petition seeking to establish paternity to a person under the age of twenty. *See* I.C. § 29-1-2-7(b) (1989). The statute was subsequently amended to add the language setting an age limit of less than twenty years old for a person to establish heirship within five months after the putative father's death. Here, the unambiguous language of the statute clearly establishes the legislative intent to limit the ability of a person to posthumously establish heirship to those persons under the age of twenty. If the legislature intended for children of putative fathers to be able to establish paternity at any time after the death of the father, it could have left the statute unchanged, but the amendment

demonstrates an intent to place restrictions of establishing paternity after a putative father has died.

[16] As to Holtswarth's reliance on *Regalado*, it is misplaced because although that case was decided after the amendment to section 29-1-2-7, the case concerned a different subsection of the statute. 933 N.E.2d at 519. There, the child was over twenty years old but was attempting to establish she was entitled to inheritance from the putative father under subsection (b)(4), which deals with situations where the putative father marries the mother of the child and acknowledges the child to be his own. *Id*. That subsection does not contain any age restriction, and therefore the court's reasoning in *Regalado* is not applicable and the case is distinguishable from Holtswarth's position.

[17] Holtswarth also points to the 1953 Comments of the Indiana Probate Code Commission[1] as evidence of the legislative intent to ensure that children born out of wedlock should be permitted to inherit from both parents and not treated differently from children born in wedlock only because they were born out of wedlock. Holtswarth is correct that the intent reflected in these comments was to "erase[] the Scarlet Letter" of children born out of wedlock and to allow them to inherit from putative parents in certain situations. I.C. § 29-1-2-7, 1953 cmts. of Ind. Prob. Code Study Comm'n. But these comments also

---

[1] "The report of the probate code study commission established by IC 2-5-16 (before its repeal) made pursuant to Acts 1949, c. 302, s. 5 and Acts 1951, c. 347, s. 2 may be consulted by the courts to determine the underlying reasons, purposes, and policies of this article, and may be used as a guide in its construction and application." Ind. Code § 29-1-1-4.

demonstrate that such inheritance has certain limits. Other comments provide that, a child born out of wedlock "shall inherit from the father . . . , *if, but only if*, (1) his paternity has been established in a court of law during the father's lifetime; (2) the putative father marries the mother of the child and acknowledges the child to be his own" and "[w]hen either of the two above conditions exists, the child is treated, as far as the laws of inheritance are concerned, the same in every respect" as a child born in wedlock. *Id.* Considered as a whole, the Commission's commentary recognizes limits upon the ability of a child born out of wedlock to posthumously establish heirship. The commentary is consistent with the plain language of the statute and provides no support for us to disregard the plain language of the statute and conjure an alternative intent. If the legislature had intended to allow persons similarly situated to Holtswarth to be able to inherit from putative fathers, it could have written the statute to do so. The trial court did not err when it found that Holtswarth did not meet the requirements under Indiana Code section 29-1-2-7.

[18] Although she does not meet the requirements under the statute, Holtswarth argues that we should find in her favor because the application of the age limitations on adult children to establish parentage in their deceased parents is unconstitutional under the Equal Protection Clause of the United States Constitution because there is no rational basis for the classification that allows an adult who is age eighteen or nineteen to establish heirship up to five months after the death of their putative father but not others who are twenty or older.

She also asserts that the age limitation contained in section 29-1-2-7(b)(2) is against public policy because it allows one adult additional time to establish paternity after the father dies but denies the same additional time to another adult just because they are twenty years of age. However, Holtswarth did not raise these arguments to the trial court and is raising them for the first time on appeal. Issues raised for the first time on appeal are waived, even those of constitutional dimensions. *See, e.g., B.Z. v. State*, 943 N.E.2d 384, 394 (Ind. Ct. App. 2011) ("[W]e do not address constitutional arguments that are raised for the first time on appeal.").

## Conclusion

[19] We, therefore, conclude that the trial court did not err in denying Holtswarth's request for a hearing on her petition to establish heirship pursuant to Indiana Code section 29-1-17-15.1. Further, the trial court did not abuse its discretion when it denied her motion to reconsider because it correctly interpreted Indiana Code section 29-1-2-7, finding that she did not satisfy the requirements under the statute.

[20] Affirmed.

May, J., and Altice, J., concur.

ATTORNEY FOR APPELLANT

Cassandra A. Kruse
Emswiller, Williams, Noland & Clarke, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Denise F. Hayden
Lacy Law Office, LLC
Indianapolis, Indiana